Case number 24-3048, United States of America v. Artie Byrd, at balance. Ms. Bhatti, for the at balance. Mr. Hobel, for the appellee. Ms. Bhatti, good morning. Good morning. Good morning. May it please the Court, Mr. Bhatti from the Federal Public Defender's Office, on behalf of Mr. Artie Byrd, I'd like to reserve two minutes for rebuttal. Mr. Byrd appeals his conviction and the reasonableness of his above-guideline sentence on various grounds. I'd like to begin with the procedural unreasonableness of his sentence, which more than doubled the median for similarly situated defendants. The Court justified its upwards variance on two grounds. First, by relying on conduct that Mr. Byrd was acquitted of in a completely unrelated case from Superior Court, over which the sentencing judge did not preside. And second, by concluding that Mr. Byrd's criminal history understated his, quote, dangerousness, and neither ground was justified. With respect to acquitted conduct. Sorry, how do you get the more than doubled? I'm sorry? How do you get, you said more than doubled? The median, the median for similarly situated defendants was 35 months and the court sentenced Mr. Byrd to 72 months. Guideline range is 41 to 51. That's correct. Right? That's correct. And the median was first for individuals in the same criminal history with the same base, with the same base offense level. Okay. The court's use of acquitted conduct. So people are, are downwardly. The median sentence was, yes. The mean was 42 months for similarly situated defendants. I'm just confused that the mean could be below the guideline range. The median? The median could be below. Right. Presumably there are outlying individuals that skew the average upwards. And so the median was 35 months. Okay. That confuses me. I'm happy to explain it further if the court would want. The first, so the court's use of acquitted conduct was problematic in three ways. First, because acquitted conduct sentencing is unconstitutional. And particularly in a situation like this, where the acquitted conduct was completely unrelated to the offense of conviction and the district court did not preside over that unrelated case. So my understanding is that is permissibly considered. There's precedent to that effect. I understand if you're trying to preserve a challenge to that, but is there any authority about whether that acquitted conduct has to be related to the case before the court? Sure, Your Honor. We would start with Watts itself. Watts is the kind of grandfather of all of these cases. And Watts itself was a fairly narrow decision. Watts considered a double jeopardy challenge to the kind of quintessential acquitted conduct case. In that case, the individual was convicted of possession with intent to distribute, acquitted of having a firearm in association with that offense. And the judge found by preponderance that the individual did have a firearm in association with the possession offense and therefore enhanced his guideline range. But does that mean that you can't consider acquitted conduct that was not before the court in the case so far? So the way that Watts justified its decision in the double jeopardy context was to say that a sentence based on the acquitted conduct does not punish a defendant for crimes of which he was not convicted, but rather increases his sentence based on the manner in which he was convicted of the crime of conviction. So the court was distinguishing a situation in which the acquitted conduct had something to do with the manner in which the convicted conduct took place rather than simply the individual. If that's one permissible way to do it, does that mean you can't do it in these other ways? Because since Watts, I don't think it has to necessarily be the way you're positing. So Watts involved that situation. Settles involved the same exact fact pattern in every case that circuit, every case that the government cites in their brief, and all of that Watts settles lineage involves cases in which the conduct is related somehow and the district court has presided over that unrelated case. But there is no case that's directly on point that says you can only do it the way you say and you cannot do it the way the district court did it. Perhaps because it's such an egregious way to do it the way that the district court did, because the district court did not. I'm sorry, is your answer that there's no direct? I have not seen a single case involving the use of unrelated conduct where the sentencing judge did not preside over that unrelated case. And just. I'll just note, I know that you think it's egregious, but having presided over a lot of trials, and especially in the superior court, that this is not an uncommon thing to do. What's there? Well, even if the court were to think that this is in general, an uncommon thing to do the way that the judge. I'm just saying you're saying it's egregious, but I'm saying it happens a lot. Your honor may be correct. Government, I guess it's the same U.S. Attorney's Office. They will provide evidence of acquitted conduct from an unrelated case and say that it was proved by preponderance. You consider it that that's a very. In my experience, not an uncommon thing to happen. So, and that in that situation, obviously, there are all the problems that the that that many, many, many courts and judges have opined on. As part of it is happening a lot, but you don't know of any. Cases that say you can't do that. This would be the 1st. I so, yes, I have not seen cases involving that. And in addition to that, I would say, particularly in the manner that the judge did here, where he did not preside over that unrelated case and involved. Right. And and obviously did not did not bring did not had had not seen these witnesses. The government did not call the witnesses. The court did not examine the witnesses and there were active their testimony was actively contested. I understand that everything that you're saying, I'm just saying that I think it happens a lot. And I think that your honor judges typically don't or trial judges typically don't hear testimony, et cetera, when it does happen, because it's only by preponderance of the evidence, which is a low bar. So transcripts, et cetera. Are often consulted when this happens. Yeah. Your honor, your honor may be correct. We would still say that the procedural, the procedural issues that were present in this case involving the courts using the cold transcript to credit some testimony from an individual whose reliability was contested and without reason dismissing these other aspects of his testimony, which were problematic, for example, crediting the unsworn single photo array identification of Mr. Bird. And as opposed to the in court failed identification without without explaining why one was more persuasive than the other, attributing the statement to take that loss like a champ, which is the same, you know, clearly erroneous, abusive discretion type standard. Right. I mean, right. But why spec credibility determinations? I'm sorry. We can't fly spec credibility determinations like that. Well, the court is obligated to consider the conflicting evidence and to explain why the court is, is, you know. Deciding to use one identification over another or to attribute the statement. As a basis for intent to Mr. Bird. Mr. Chambers, when we're not when dismissing an entirely contradictory statement, and there were a number there were a number of issues with Mr. Chambers with with Chambers is testimony that we highlight and the court at no point to distinguish that contradictory evidence. And I think that's a problem and that we would refer the court to the Barker decision where the 7th Circuit indicated that the judge has an obligation to do a searching inquiry into the contradictory evidence and distinguish it. And the court did not do that here. So, as a procedural matter, even if the court decides that constitutionally, this was permissible procedurally, this was an abusive discretion and even and then taking it up further, we still think that the preponderance standard was not satisfied. None of the evidence here was uncorroborated and or unsworn hearsay with no other marks of reliability. In that way, it's very similar to the Rivera-Ruiz decision from the 1st Circuit where the court found that findings based solely on unreliable evidence cannot establish a preponderance standard. So, we would refer the court to that decision. We're still reviewing for clear error, right? Right. And Rivera-Ruiz said that because this unreliable evidence can't establish a preponderance, it is therefore clearly erroneous. So, for that reason, because it can't establish a preponderance, it is clear error. I would just wanted to also speak briefly about the other procedural unreasonableness issues that we have raised in our brief, which namely the court never distinguished this case from the mine run. So, the universe of similarly situated defendants, we think that was also an issue. At no point did the court explain the degree of variance adequately. And so, we would also ask this court to consider that as an abuse of discretion by the district court. Is there any, on the Second Amendment question, is there any feature of this case that's different from the one we just argued? I don't know if you've heard the argument. Yes, I did. I would just point out that Mr. Byrd's predicate offense is what the district court called a juvenile adjudication, and the government has not provided any historical analog for lifetime disarmament based on a juvenile adjudication. Okay. Thank you. We'll give you a moment. Marco Bell. Good morning, and may it please the court. The district court, Marco Bell for the United States. The district court did not abuse its discretion procedurally or substantively in imposing a 21-month upward variance, that's less than two years, for a third felon in possession offense committed while unsupervised, released for the second by a defendant with a history of committing violent crimes that was not fully accounted for in his guidelines criminal history score. The district court here properly considered the acquitted conduct underlying Byrd's acquittal for accessory after the fact with two percent assault with intent to kill while armed in superior court. In terms of precedent for handling unrelated conduct that's acquitted under Watts, we'd refer the court to Watts itself and the there. Watts relied on 18 U.S.C. section 3661. In fact, it began its analysis with that statute, which says no limitation shall be placed on information concerning the background character and conduct of a person convicted of an offense for the purpose of imposing an appropriate sentence. The court also relied on Williams v. New York, in which a sentencing judge had relied on 30 uncharged burglaries and out-of-court evidence of that to impose the death penalty in a New York case. And so, Watts summarized 3661 and Williams is, neither the broad language of 3661 nor our holding in Williams suggests any basis for the courts to invent the blanket prohibition against considering certain types of evidence at sentencing. So, we think the logic of Watts fully supports what the district court did here and completely refuse this artificial distinction between related and unrelated acquitted conduct for purposes of sentencing the 3553 factors. I would direct this court to... Is there any limit on the position you're advocating? I mean, Watts was a couple of decades ago and we have trendy jurisprudence and increasing emphasis on the need for jury findings and the need for pure proof beyond a reasonable doubt. At some point, does it not with too much like you're really sentencing based on district court fact-finding by a preponderance? I mean, notwithstanding the language of 3661, which literally says, no limitation shall be placed on the information the district court may receive, there are limitations and safeguards in place that it has to be proved by a preponderance of the evidence. There are numerous procedural... It has to be explained procedurally to support a variance. And of course, although it doesn't... It's not necessarily... It's not relevant here because this was not a guideline sentence. In fact, the guidelines... The sentencing commission just changed the policy statement and the guidelines to what my understanding is to make it more difficult to... Consider acquittal. Yes, correct. So, there are limits. But again, going back to the logic of Watts in the cases this court has applied Watts and settles, is that there is not... There is a broad range of information a sentencing court can consider in imposing a just sentence for the individual. In this case, this was a trial in Superior Court that took place literally right before the retrial in federal court on the felon in possession case. And it was information that directly refuted some of the arguments that Mr. Byrd made at sentencing, that he only armed himself in self-defense, that he was... That this was... That he was... That he had armed himself because of traumatic experience he had after he'd been released from prison on his previous felon in possession conviction. So, it was directly relevant to the sentencing decision. It was important to share this with the court. And made the proper findings and found by preponderancy evidence. And its findings were not clearly erroneous. And it fully explained why it credited the identification by the victims remain chambers in the AWIC case. Did the same district judge preside over the first trial? No, no. So, that was... I believe it was Judge Raffin in Superior Court presided over the AWIC while armed. No, no. I mean, there was a hung jury in this case, correct? Correct, yes. Yes. Was it the same federal district judge preside over the first case where the jury was hung? Yes, it was Judge McFadden in both cases. So, this is bringing to his attention something that happened in between the first and second trials that came before him? That's right. I believe that... That makes it, I think, even more relevant, doesn't it, to the sentencing? Yes. I mean, I think it was directly relevant. It was certainly, you know... Because it was on release in Judge McFadden's case, then, when this happened? Oh, no. I'm sorry. No. So, because of the pandemic, a lot of these trials were delayed. So, the AWIC... The conduct underlying the AWIC accessory acquittal, that took place, I believe, in 2019. Sorry, AWIC? I'm sorry. Assault with Intent to Kill While Armed. So, I'm lapsing into my DC Code Superior Court speak. I'm sorry. So, that occurred in 2019. That occurred before Mr. Byrd's second felon in possession conviction. But the trial in that case in Superior Court occurred in the same month, immediately before the retrial in this case, if that chronology makes sense. The conduct occurred before the first trial, but the retrial occurred... I'm sorry. I'm just trying to understand, from Judge McFadden's point of view, how these events related to the fact that there was a trial, and then a period, and then a second trial. And so, this defendant was on release in Judge McFadden's case for some period of time. But you're saying the AWIC occurred before even the first trial in this case? Correct. So, what is it that happened right before the second trial? It was the trial for the conduct in Superior Court. Oh, so the acquittal. Yes, the acquittal. I see, I see. I'm sorry for any confusion there. No, that's okay. That's okay. I'm just thinking from the point of view of a judge, while you were on release in my case, you went on trial in Superior Court and you were acquitted. But it just seems relevant. It's not a completely unrelated thing. Just temporarily, you are on release in my case as the Federal District Court judge when you got acquitted. And so, for the government to bring to my attention that what happened in that trial does not necessarily exonerate the defendant who's being sentenced before me, it just seems extremely relevant based on that timing. I think that's right. It goes really to the history and characteristics of the defendant. But counsel's point stands, correct, that Judge McFadden did not try the case on which he's drawing? That's correct. But sentencing courts frequently are called upon to rely on hearsay. And we cited to this court's precedent Miller, which is one of many precedents that say that hearsay is admissible in a sentencing proceeding. And in this case, there was reliable hearsay. It doesn't get more reliable than sworn testimony that's subject to cross-examination in a recent prior trial. So, Judge McFadden carefully reviewed the trial transcripts, the grand jury transcripts, the evidence in that case and made findings that were not clearly erroneous. I would point out just as a factual matter, there's been, in Mr. Byrd's reply brief, there was a suggestion that our proffer that Byrd did not work at United Masonry with the victim. It was not as coercive that that was not supported. I would direct the court to page 19 of the PSR in this case in which Byrd admitted that he worked at United Masonry from January to April 2019, which is entirely consistent with the victim's testimony in the AWIC well-armed accessory case about who AR was, the person who was involved in the robbery and the shooting. And just briefly, very briefly on the Second Amendment point, just to loop it back into the case before us, this defendant, Mr. Byrd, was on supervised release just like Mr. Richardson. So, to the extent that the court were to embrace that sort of narrower logic that Your Honor, Judge Katz has alluded to in that case, it would cover Mr. Byrd's case as well. So, unless the court has any further questions, we would ask the court to affirm. Thank you. Thank you. Ms. Beatty, we'll give you two minutes. Thank you. I just wanted to point out a couple of things. One, in the denial of cert in McClinton, which was the case involving acquitted conduct where four Supreme Court justices explicitly stated they're overriding concerns with acquitted conduct sentencing but decided not to grant cert because the sentencing commission was actively considering the issue. There's an important sentence in Justice Sotomayor's statement, which is the fact that even though a jury's specific reasons for an acquittal will typically be unknown, the jury has formally and finally determined that the defendant will not be held criminally culpable for the conduct at issue. And here, we have that exact situation where the jury decided that Mr. Byrd would not be held criminally culpable. The government comes to this court and decides to hold him criminally culpable for that conduct. He's held culpable for what he's being sentenced for, but within the range, it's a factor that can be considered. Isn't that analytically what's happening? I'm sorry, can you repeat that? He's criminally culpable for the crime of conviction, and he's being sentenced. And I guess the case law says you can look at anything in deciding what's the correct and reasonable sentence within the range, and this is just one factor. So, it's not the same as sentencing him for the acquitted conduct. It's determining the sentence for the crime of conviction and using this as a factor. So, here, again, we go back to Watts and how this all started, right? But the statement by Justice Sotomayor expressed, I mean, this is the crux of the issue with acquitted conduct sentencing. I'm interested in, I guess, your views of somebody like Al Capone. He was convicted of tax evasion despite committing lots and lots of murders and other things because he was a mafia boss, and then he gets the highest sentence ever for tax evasion. Do you think that was improper? This is a completely different scenario. In general, I think that they consider the acquitted conduct. I don't know if they considered his acquitted conduct that was in any way related to his other conduct. I assume it wasn't. I don't think it was. Then it's a problem. I mean, acquitted conduct sentencing in general is a problem for all the reasons that Justice Sotomayor identified in her statement in McClinton. It's particularly a problem here where we have Mr. Byrd acquitted in superior court. The jury has closed the door on punishment. The government comes here, and the district court expressly enhances his sentence based on the uncounted, district court's words, uncounted acquitted conduct for the AWICS situation. I'm just, I know this is, this is just kind of a theoretical question. So, you're thinking that in no situation is it ever appropriate, like even for Al Capone, who they were not able to convict on murders that, let's assume he didn't commit, and they can only get him on tax evasion. I would say they can't consider the murder. I would say yes to that situation for, again, all the reasons that Justice Sotomayor and Justice Kavanaugh and Justice Barrett and Justice Gorsuch have all expressed. And I would say particularly in this type of a situation, it's especially egregious. And I wanted to just point out a couple more things. The government's logic that there's no restriction based on the languages, based on the language of 3661 on what a court can consider in sentencing would really know no bounds. And that would, that's not, that's not the law. We know that the Sixth Amendment applies. We know the Fifth Amendment applies. We know that hearsay must be reliable. We know that the defendant cannot be sentenced based on inaccurate information or speculation. And here that's what happened. There's nothing that connected AR to Mr. Byrd outside of chambers, unsworn, single array photo identification in the hospital. The testimony from Eric Rubio never connected AR to Mr. Byrd. This was a classic case of misidentification. And for all the reasons that we've already stated in our brief, there's a huge problem with using this, because what it boiled down to was the district court speculating as to the reasons why that failed identification happened. Hairstyle change, passage of time, all those factors were expressly put in front of the jury, and the jury rejected those reasons. So for that reason, we would say that this is an abuse of discretion by the district court. We ask this court to reverse. Thank you, counsel. The case is submitted.
judges: Katsas; Pan; Ginsburg